**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**AUGUSTA DIVISION**

| | |
|---|---|
| IN RE:<br><br>**Jo Carlton Barker,**<br>        **Debtor.** | **CHAPTER 13**<br>**CASE NO.: 22-10436-SDB** |
| **Wilmington Savings Fund Society,**<br>**FSB, Not In Its Individual Capacity**<br>**But Solely As Owner Trustee of**<br>**Pretium TRS Warehouse Trust,**<br><br><br>                    Movant,<br>v.<br><br>**Jo Carlton Barker,**<br>        **Debtor,**<br>**Huon Le,**<br>        **Trustee,**<br>                    Respondents. | CONTESTED MATTER |

<u>**MOTION FOR RELIEF FROM THE AUTOMATIC STAY**</u>

COMES NOW, Wilmington Savings Fund Society, FSB, Not In Its Individual

Capacity But Solely As Owner Trustee of Pretium TRS Warehouse Trust (the

"Movant"), by and through its undersigned counsel, moves for relief from the

automatic stay and alleges as follows:

1.

The Court has jurisdiction over this matter pursuant to 11 U.S.C. § 362, FRBP

4001(a), and the various other applicable provisions of the United States Bankruptcy

Code, Federal Rules of Bankruptcy Procedure, and the laws of the United States of

America.

2.

Jo Carlton Barker (the "Debtor"), filed a petition for relief under Chapter 13 of the Bankruptcy Code on June 27, 2022.

3.

Movant is the holder or servicer of a loan secured by certain real property in which the Debtor has an interest.  Movant holds a security interest in the Debtor's real property now or formerly known as 3997 Dowling Drive, Martinez, Georgia 30907 (the "Property") by virtue of a Security Deed dated February 23, 2001.  Said Security Deed secures a Note in the original principal amount of $165,000.00.  The promissory note has been duly endorsed. Secured Creditor is the holder of the Note (the "Noteholder"), and is either the original Mortgagee, beneficiary, or assignee of the security instrument for the referenced loan.

4.

The terms and conditions of the Note and Mortgage were later amended pursuant to the Loan Modification Agreement (the "Agreement") made June 17, 2003. Said Agreement created a new principal balance of $175,461.38. A true and accurate copy of the Agreement is attached hereto.

5.

Movant alleges that the Debtor is in default to Movant under the terms of the loan documents, having failed to make certain post-petition mortgage payments that have come due.  As of January 03, 2023, the post-petition arrearage owed to Movant is $1,988.62 and consists of four (4) monthly mortgage payments at $607.66, less a

suspense balance of $442.02. An additional payment will come due February 1, 2023 and on the first day of each month thereafter until the loan is paid in full.

6.

The current unpaid principal balance due under the loan documents is approximately $102,797.73.   The Property is most recently valued at $342,143.00 by the Columbia County Tax Assessor's Office.

7.

Movant's security interest in the Property is not adequately protected due to the Debtor's failure to maintain the mortgage payments.

8.

Movant has incurred attorney's fees and costs as a result of filing this motion. These fees and costs are recoverable pursuant to the loan documents, and Movant seeks leave to recover these fees and costs under the remedies available therein.

9.

Pursuant to 11 U.S.C. § 362, Movant alleges that sufficient cause, including lack of adequate protection, exists for the automatic stay to be terminated.

WHEREFORE, Movant respectfully prays to the Court as follows:

(a) That the automatic stay under 11 U.S.C. § 362 be modified to allow Movant to pursue state remedies to protect its security interest in the Property, including, but not limited to, advertising to effectuate a foreclosure sale and gaining possession of the Property; to

contact the Debtor via telephone or written correspondence to discuss potential loan workout or loss mitigation opportunities; and to perform property preservation as appropriate;

(b) That Movant's attorney's fees and costs incurred in filing and prosecuting this Motion be recoverable as pursuant to the loan documents and remedies available therein;

(c) That the fourteen (14) day stay of Bankruptcy Rule 4001(a)(3) be waived;

(d) That Movant be permitted to offer and provide Debtor(s) with information regarding a potential forbearance agreement, loan modification, refinance agreement, or other loan workout/loss mitigation agreement, and to enter into such an agreement with Debtor(s).

(e) That in the event of an Order granting relief from the automatic stay and said Order also instructing the Chapter 13 Trustee to cease disbursements on Movant's Proof of Claim, Fed. R. Bank. P. 3002.1 shall no longer apply as to Movant, as said Rule only applies in Chapter 13 cases in which claims secured by a principal residence are provided for under Section 1322(b)(5) of the Code in the Chapter 13 Plan; and

(f) For such other and further relief the Court deems just and proper.

Date: January 6, 2023

**Robertson, Anschutz, Schneid, Crane & Partners, PLLC**

/s/ Andrea L. Betts
Andrea L. Betts
Georgia Bar # 432863
10700 Abbott's Bridge Road, Suite 170
Duluth, GA  30097
Telephone: 470-321-7112
Fax: 404-393-1425
Email: abetts@raslg.com

# Supporting Documents

# ADJUSTABLE RATE NOTE
## (libor index - rate caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

| | | |
|---|---|---|
| __February 23, 2001__ | __Greenville__ | __Georgia__ |
| | City | State |

__3997 DOWLING DRIVE   MARTINEZ, GA 30907__
<div align="center">Property Address</div>

**1.   BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. $_____165,000.00_____ (this amount will be called "principal"), plus interest, to the order of the Lender. The Lender is ___EquiCredit_____.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note will be called the "Note Holder."

**2.   INTEREST**
I will pay interest at a yearly rate of _8.570_ %.
Interest will be charged on unpaid principal until the full amount of principal has been paid. The interest rate I will pay will change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(D) of this Note.

**3.   PAYMENTS**
(A) Time and Place of Payments
I will pay principal and interest by making payments every month.
I will make my monthly payments on the first day of each month beginning on __April 1, 2001__.
I will make my monthly payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on __March 1, 2031__ I still owe amounts under this Note, I will pay those amounts in full on that date, which is called "maturity date."
I will make my monthly payments at P.O. Box 44132, Jacksonville, Florida 32231 or at a different place if required by the Note Holder.
(B) Amount of My Initial Monthly Payments
Each of my initial monthly payments will be in the amount of U.S. $_____1,276.90_____. This amount may change.
(C) Monthly Payment Changes
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**
(A) Change Dates
The interest rate I will pay may change on the first day of _____March, 2003_____, and on that day every six months thereafter. Each date on which my interest rate could change is called a "Change Date."
(B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the London InterBank Offered Rate for dollar deposits having a maturity of six months ("LIBOR") as reported in the Wall Street Journal published in Orlando, Florida. The most recent Index figure available as of the 15th day of the month or next business day thereafter of the month which is two months prior to the change date is called the "Current Index."
If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.
(C) Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding __THREE  & 82/100__ percentage points ( ____3.820__ %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.
The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.
(D) Limits on Interest Rate Changes
The interest rate I am required to pay at the first Change Date will not be greater than __11.570__ % or less than __8.570__ %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1.00%) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than __16.125__ % nor less than the initial interest rate.
(E) Effective Date of Changes
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.
(F) Notice of Changes
The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

Borrower's Initials

5.   BORROWER'S PAYMENTS BEFORE THEY ARE DUE

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in a letter that I am doing so. A prepayment of all of the unpaid principal is known as a "full prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment."

I may make a full or partial prepayment; however, the Note Holder may charge me for the privilege a prepayment charge during the first three years of the loan equivalent to _____ 3 months interest at the rate set forth above on the amount of the principal balance prepaid. Notwithstanding anything to the contrary in the Note or in any of its related loan closing documents, no prepayment penalty, if any, shall be charged if prepayment occurs within the first 90 days of the date this Note was executed. If I make a partial prepayment, there will be no delays in the due dates or changes in the amounts of my monthly payments unless the Note Holder agrees in writing to those delays or changes. I may make a full prepayment at any time. If I choose to make a partial prepayment, the Note Holder may require me to make the prepayment on the same day that one of my monthly payments is due. The Note Holder may also require that the amount of my partial prepayment be equal to the amount of principal that would have been part of my next one or more monthly payments.

6.   LOAN CHARGES

I understand and believe that this lending transaction complies with Georgia usury, lending, general obligation, and real property laws of Georgia, unless preempted by Federal law, however, if any interest or other charges in connection with this lending transaction are ever determined to exceed the maximum amount permitted by law, I understand and agree that: (i) the amount of the interest or other charges payable by me pursuant to this lending transaction shall be reduced to the maximum amount permitted by law; and (ii) any excess amount previously collected from me in connection with this lending transaction which exceeded the maximum amount permitted by law, will be credited against the outstanding principal balance. If the outstanding principal balance has already been repaid, the excess amount paid will be refunded to me. All fees, charges, goods, things in action or any other sums or things of value (collectively, the "Additional Sums") paid or payable by me, whether pursuant to this Note, the Mortgage/Deed of Trust or any other document or instrument in any way pertaining to this lending transaction, or otherwise with respect to this lending transaction, which, under the laws of Georgia, may be deemed to be interest with respect to this lending transaction, shall, for the purpose of any laws of Georgia which may limit the maximum amount of interest to be charged with respect to this lending transaction, be payable by me as, and shall be deemed to be, additional interest, and for such purposes only, the interest rate of this lending transaction (as defined in this Note) shall be deemed to be increased by the Additional Sums.

I acknowledge that the principal includes closing costs listed on the Loan Closing Statement and/or the Itemization of Amount Financed (unless such fees are paid by me in cash or by check at closing) and deem such costs to be reasonable and specifically agree to pay them. I also acknowledge and understand that the loan origination fee, if any, and any other prepaid finance charges are fully earned at the time the loan is made and are not refundable.

7.   BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any of my monthly payments by the end of ten calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.00% of my overdue payment. I will pay this late charge only once on any late payment.

(B) Returned Check Charge

In the event that a check used to make any payment required by this Note is returned unpaid by the payor bank for insufficient funds or credit, I agree to pay you a $25.00 fee for your additional costs incurred in processing such check. This charge will be required whether or not the returned check causes my payment to be late.

(C) Notice from Note Holder

If I do not pay the full amount of each monthly payment on time, the Note Holder may send me a written notice telling me that If I do not pay the overdue amount by a certain date I will be in default. That date must be at least 10 days after the date on which the notice is mailed to me or, if it is not mailed, 10 days after the date on which it is delivered to me.

(D) Default

If I do not pay the overdue amount by the date stated in the notice described in (C) above, I will be in default. If I am in default, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount.

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back for all of its costs and expenses to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

8.   GIVING OF NOTICES

Any notice that must be given to me under this Note will be given by delivering it or by mailing it by certified mail addressed to me at the Property Address in the Security Instrument. A notice will be delivered or mailed to me at a different address if I give the Note Holder a notice of my address change.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by certified mail to the Note Holder at the address stated in Section 3 above. A notice will be mailed to the Note Holder at a different address if I am given a notice of that different address.

9.   RESPONSIBILITY OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each of us is fully and personally obligated to pay the full amount owed and to keep all of the promises made in this Note. Any guarantor, surety, or endorser of this Note (as described in Section 10 below) is also obligated to do these things. The Note Holder may enforce its rights under this Note against each of us individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note. Any person who takes over my rights or obligations under this Note will have all of my rights and must keep all of my promises made in this Note. Any person who takes over the rights or obligations of a guarantor, surety, or endorser of this Note (as described in Section 10 below) is also obligated to keep all of the promises made in this Note.

10. **BORROWER'S WAIVERS**

I waive my rights to require the Note Holder to do certain things. Those things are: (A) to demand payment of amounts due (known as "presentments"); (B) to give notice that amounts due have not been paid (known as "notice of dishonor"); (C) to obtain an official certification of nonpayment (known as a "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Note Holder if I fail to keep my promises under this Note, or who signs this Note to transfer it to someone else also waives these rights. These persons are known as "guarantors, sureties, and endorsers."

11. **UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note. Some of those conditions are described as follows:

"Transfer of the Property. If Borrower sells or transfers all or any part of the Property or an interest therein, excluding (a) the creation of the lien or encumbrance subordinate to this Security Instrument, (b) a transfer by devise, descent, or by operation of law upon the death of a joint tenant, or (c) the grant of any leasehold interest of three years or less not containing an option to purchase, Borrower shall cause to be submitted information required by Lender to evaluate the transferee as if a new loan were being made to the transferee. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender, on the basis of any information obtained regarding the transferee, reasonably determines that Lender's security may be impaired, or that there is an unacceptable likelihood of a breach of any covenant or agreement in this Security Instrument, or if the required information is not submitted, Lender may declare all of the sums secured by this Security Instrument to be immediately due and payable. If Lender exercises such option to accelerate, Lender shall mail Borrower notice of acceleration in accordance with paragraph 12 hereof. Such notice shall provide a period of not less than 30 days from the date the notice is mailed or delivered within which Borrower may pay the sums declared due. If Borrower fails to pay such sums prior to the expiration of such period, Lender may, without further notice or demand on Borrower, invoke any remedies permitted by paragraph 17 hereof."

<div style="text-align:center">

NOTICE TO BORROWER
Do not sign this Note if it contains blank spaces.
All spaces should be completed before you sign.

</div>

Borrower  **JO C. BARKER**

Borrower  **ROBERT W. BARKER**

Borrower

(Sign Original Only)

**WITHOUT RECOURSE
PAY TO THE ORDER OF**

EquiCredit Corporation of America

NationsCredit Financial Services
Corporation d/b/a EquiCredit

By
D. J. MINTON, VP

**WITHOUT RECOURSE
PAY TO THE ORDER OF**

EquiCredit Corporation of America

By
D. J. MINTON, VP

Return to: Donald H. White
Steinberg, Steinberg & White, P.C.
2019 Professional Pkwy., Suite A
Augusta, GA 30907

*293*

GEORGIA INTANGIBLE TAX PAID
$ 495.00
March 28 2001
CINDY ?......, CLERK OF SUPERIOR
COURT, COLUMBIA COUNTY GEORGIA

3738

GEORGIA, COLUMBIA COUNTY
FILED AND RECORDED 2P. M. 3-28-01
Dee? BOOK 2635 PAGE 293-299

~?? MASON CLERK

Record and return to:
EquiCredit Corp./Secondary Marketing Dept.
P.O. Box 44136/DOC. CONTROL DIV.
Jacksonville, FL 32231

ATTN: Rosanne Renshaw

# SECURITY DEED

THIS DEED is made this ___23rd___ day of ___February, 2001___, between the Grantor, **JO C. BARKER AND ROBERT W. BARKER, WIFE AND HUSBAND** (herein "Borrower"), and the Grantee, **EquiCredit** a corporation organized and existing under the laws of the State of __North Carolina__, whose address is __100 Executive Center Dr. #106  Greenville, SC 29615-4508__ (herein "Lender").

WHEREAS, Borrower is indebted to Lender in the principal sum of U.S. $ ___165,000.00___, which indebtedness is evidenced by Borrower's note dated ___February 23, 2001___ and extensions and renewals thereof (herein "Note"), providing for monthly installments of principal and interest, with the balance of the indebtedness, if not sooner paid, due and payable on __March 1, 2031__;

TO SECURE to Lender the repayment of the indebtedness evidenced by the Note, with interest thereon; the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed to Secure Debt; and the performance of the covenants and agreements of Borrower herein contained, Borrower does hereby grant and convey to Lender and Lender's successors and assigns, with power of sale, the following described property located in the County of __COLUMBIA__, State of Georgia:

**SEE EXHIBIT "A" HERETO ATTACHED AND BY THIS REFERENCE MADE A PART HEREOF**

which has the address of __3997 DOWLING DRIVE, MARTINEZ, GA 30907__
(Street, City, State, Zip Code))                    (herein "Property Address");

TO HAVE AND TO HOLD such property unto Lender and Lender's successors and assigns forever, together with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents, all of which shall be deemed to be and remain a part of the property covered by this Deed; and all of the foregoing, together with said property (or the leasehold estate if this Deed is on a leasehold) are hereinafter referred to as the "Property."

Borrower covenants that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1.  **Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment, late charges and other charges due under the Note.
2.  **Funds for Taxes and Insurance.** Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior security deed, mortgage or deed of trust if such holder is an institutional lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed.

-2-

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Deed, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed.

3.    **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

4.    **Prior Deeds to Secure Debt; Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any security deed, mortgage, deed of trust or other security agreement with a lien which has priority over this Deed, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property ("Property Taxes") which may attain a priority over this Deed, and leasehold payments or ground rents, if any. In the event Borrower fails to pay any due and payable Property Taxes, Lender may, in its sole discretion, pay such charges and add the amounts thereof to the principal amount of the loan secured by the Security Instrument on which interest shall accrue at the contract rate set forth in the Note.

5.    **Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage", and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. In the event Borrower fails to maintain hazard insurance (including any required flood insurance) in an amount sufficient to satisfy all indebtedness, fees, and charges owed Lender (in addition to payment of all liens and charges which may have priority over Lender's interest in the property), Lender may, in its sole discretion, obtain such insurance naming Lender as the sole beneficiary (single interest coverage). Lender may add any premiums paid for such insurance to the principal amount of the loan secured by this Security Instrument on which interest shall accrue at the contract rate set forth in the Note. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any security deed, mortgage, deed of trust or other security agreement with a lien which has priority over this Deed.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed.

6.    **Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed is on a leasehold. If this Deed is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

7.    **Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed, or if any action or proceeding is commenced which materially affects Lender's interest in the Property (including without limitation a proceeding in bankruptcy, probate, condemnation or to enforce other laws and regulations), then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. In addition, Grantor (Mortgagor) covenants at all times to do all things necessary to defend the title to all of the said property, but the Beneficiary (Mortgagee) shall have the right at any time to intervene in any suit affecting such title and to employ independent counsel in connection with any suit to which it may be a party by intervention or otherwise, and upon demand Grantor (Mortgagor) agrees either (1) to pay the Beneficiary all reasonable expenses paid or incurred by it in respect to any such suit affecting title to any such property, or affecting the Beneficiary's (Mortgagee's) liens or rights hereunder, including, reasonable fees to the Beneficiary's (Mortgagee's) attorneys or (2) to permit the addition of such expenses, costs, and attorney's fees to the principal balance of the Note(s) secured by this Deed of Trust (Mortgage) on which interest shall accrue at the Note rate. If Lender required mortgage insurance as a condition of making the loan secured by this Deed, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Deed. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

8.    **Inspection.** Lender may make or cause to be made reasonable extras upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

9.    **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any security deed, mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

10.    **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Deed granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

11.    **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Deed, but does not execute the Note, (a) is co-signing this Deed only to grant and convey that Borrower's interest in the Property to Lender under the terms of this Deed, (b) is not personally liable on the Note or under this Deed, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Deed or the Note, without that Borrower's consent and without releasing that Borrower or modifying this Deed as to that Borrower's interest in the Property.

- 3 -

12.   Notice.  Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein.  Any notice provided for in this Deed shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

13.   Governing Law; Severability.  The state and local laws applicable to this Deed shall be the laws of the jurisdiction in which the Property is located.  The foregoing sentence shall not limit the applicability of Federal law to this Deed.  In the event that any provision or clause of this Deed or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Deed and the Note are declared to be severable.  As used herein, "costs", "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

14.   Borrower's Copy.  Borrower shall be furnished a conformed copy of the Note and of this Deed at the time of execution or after recordation hereof.

15.   Rehabilitation Loan Agreement.  Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender.  Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

16.   Transfer of the Property or Beneficial Interest in Borrower.  If all or any part of the Property or an interest therein is sold or transferred by Borrower (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person or persons but is a corporation, partnership, trust or other legal entity) without Lender's prior written consent, excluding (a) the creation of a lien or encumbrance subordinate to this Security Instrument which does not relate to a transfer of rights of occupancy in the property, (b) the creation of a purchase money security interest for household appliances, (c) a transfer by devise, descent or by operation of law upon the death of a joint tenant or (d) the grant of any leasehold interest of three years or less not containing an option to purchase, Lender may, at Lender's option, declare all the sums secured by this Security Instrument to be immediately due and payable.

If Lender exercises such option to accelerate, Lender shall mail Borrower notice of acceleration in accordance with paragraph 12 hereof.  Such notice shall provide a period of not less than 30 days from the date the notice is mailed within which Borrower may pay the sums declared due.  If Borrower fails to pay such sums prior to the expiration of such period, Lender may, without further notice or demand on Borrower, invoke any remedies permitted by paragraph 17 hereof.

Lender may consent to a sale or transfer if: (1) Borrower causes to be submitted to Lender information required by Lender to evaluate the transferee as if a new loan were being made to the transferee; (2) Lender reasonably determines that Lender's security will not be impaired and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable; (3) interest will be payable on the sums secured by this Security Instrument at a rate acceptable to Lender; (4) changes in the terms of the Note and this Security Instrument required by Lender are made, including, for example, periodic adjustment in the interest rate, a different final payment date for the loan, and addition of unpaid interest to principal; and (5) the transferee signs an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument, as modified if required by Lender.  To the extent permitted by applicable law, Lender also may charge a reasonable fee as a condition to Lender's consent to any sale or transfer.

Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

NON-UNIFORM COVENANTS.  Borrower and Lender further covenant and agree as follows:

17.   Acceleration; Remedies.  Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Deed, including the covenants to pay when due any sums secured by this Deed, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Deed, and sale of the Property.  The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and sale.  If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Deed to be immediately due and payable without further demand and may invoke the power of sale herein granted (and Borrower hereby appoints Lender the agent and attorney-in-fact for Borrower to exercise said power of sale) and any other remedies permitted by applicable law.  Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees.

If Lender invokes the power of sale, Lender shall mail a copy of a notice of sale to Borrower in the manner provided in paragraph 12 hereof and shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law.  Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Lender may determine.  Lender or Lender's designee may purchase the Property at any sale.

Lender shall deliver to the purchaser Lender's deed to the Property in fee simple and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance.  The recitals in Lender's deed shall be prima facie evidence of the truth of the statements made therein.  Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order:  (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable attorneys' fees and costs of title evidence; (b) to all sums secured by this Deed; and (c) the excess, if any, to the person or persons legally entitled thereto.  The power and agency hereby granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of said indebtedness as provided by law.

If the Property is sold pursuant to this paragraph 17, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at such sale.  If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with applicable law.

18.   Borrower's Right to Reinstate.  Notwithstanding Lender's acceleration of the sums secured by this Deed due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Deed discontinued at any time prior to the earlier to occur of (i) the fifth day before sale of the Property pursuant to the power of sale contained in this Deed or (ii) entry of a judgment enforcing this Deed if: (a) Borrower pays Lender all sums which would be then due under this Deed and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Deed, (c) Borrower pays all reasonable expenses incurred by Lender in enforcing the covenants and agreements of Borrower contained in this Deed, and in enforcing Lender's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Deed, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Deed shall continue unimpaired.  Upon such payment and cure by Borrower, this Deed and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

- 4 -

**19.   Assignment of Rents; Appointment of Receiver; Lender in Possession.**  As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due.  All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Deed.  Lender and the receiver shall be liable to account only for those rents actually received.

**20.   Release.**  Upon payment of all sums secured by this Deed, Lender shall cancel this Deed without charge to Borrower.  Borrower shall pay all costs of recordation, if any.

**21.   Waiver of Homestead.**  Borrower hereby waives all right of homestead exemption in the Property.

**22.   Assumption Not a Novation.**  Lender's acceptance of an assumption of the obligations of this Deed and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

**23.   Deed to Secure Debt.**  This conveyance is to be construed under the existing laws of the State of Georgia as a security deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

**24.   Riders to this Security Instrument.**  If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.  [Check applicable box(es)].

[X] Adjustable Rate Rider         [ ] Condominium Rider              [ ] 1-4 Family Rider

[ ] Graduated Payment Rider       [ ] Planned Unit Development Rider

[X] Other(s) (specify) EXHIBIT A - LEGAL DESCRIPTION

**25.   Conformity With Laws.**  If any provision of this Mortgage (Deed of Trust) is found to be in violation of any law, rule or regulation which affects the validity and/or enforceability of the Note and/or Mortgage (Deed of Trust), that provision shall be deemed modified to comply with applicable law, rule, or regulation.

<div style="text-align:center">

**REQUEST FOR NOTICE OF DEFAULT AND
FORECLOSURE UNDER SUPERIOR SECURITY
DEEDS, MORTGAGES OR DEEDS OF TRUST**

</div>

Borrower and Lender request the holder of any security deed, mortgage, deed of trust or other encumbrance with a lien which has priority over this Security Deed to give Notice to Lender, at Lender's address set forth on page one of this Security Deed, of any default under the superior encumbrance and of any sale or other foreclosure action.

IN WITNESS WHEREOF, BORROWER has executed and sealed this Deed.

Signed, sealed and delivered
in the presence of:

_____          Borrower  JO C. BARKER

_____          Borrower  ROBERT W. BARKER

_____          Borrower

Notary Public, ~~COLUMBIA~~ RICHMOND _____ County, Georgia
MY COMMISSION EXPIRES: 06/23/01

EXHIBIT "A"

All that lot or parcel of land wit improvements thereon, situate, lying and being in the State of Georgia, County of Columbia, being known and designated as Lot 3, Block "B", Heritage Hill Subdivision, Section II, as shown on a plat prepared by Robert L. Herrington, Jr. dated August 6, 1992 and re corded in the Office of the Clerk of Superior Court of Columbia County, Georgia, in PC "B", Slide 172, #1; reference being made to said plat for a more complete and accurate description as to the metes bounds and location of said property.

Said property is conveyed subject to Protective Covenants of record in said Clerk's Office in Deed Book 975, Page 80.

# ADJUSTABLE RATE RIDER
### (libor index - rate caps)

THIS ADJUSTABLE RATE RIDER is made this _____23rd_____ day of __February 2001_, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to:

__EquiCredit_____ (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

__3997 DOWLING DRIVE  MARTINEZ, GA 30907_____
(Property Address)

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

Additional Covenants. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of _____ **8.570** %. The Note provides for changes in the interest rate and the monthly payments, as follows:

**(A) Change Dates**
The interest rate I will pay may change on the first day of __March, 2003_____, and on that day every six months thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the London InterBank Offered Rate for dollar deposits having a maturity of six months ("LIBOR") as reported in the Wall Street Journal published in Orlando, Florida. The most recent Index figure available as of the 15th day of the month or next business day thereafter of the month which is two months prior to the change date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding THREE & 82/100 percentage points (_3.820_ %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**
The interest rate I am required to pay at the first Change Date will not be greater than __11.570_% or less than ____8.570_ %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1.00%) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than ____16.125_% nor less than the initial rate.

**(E) Effective Date of Changes**
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**
The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

- 2 -

### B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Uniform Covenant 17 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

By signing below, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

Borrower _____   **JO C. BARKER**

Borrower _____   **ROBERT W. BARKER**

Borrower _____

Page 2 of 2

BK 3996 PG076

When Recorded Mail To:
Safeguard Properties, Inc.
650 Safeguard Plaza
Brooklyn Heights, Ohio 44131
ATTN: Mr. Eric Solowitch

CLERK OF SUPERIOR COURT
COLUMBIA COUNTY GEORGIA

2003 OCT 20  AM 11:51    76-80

BOOK _____ PG ____
CINDY MASON, CLERK

---------------------------------------------(Space Above Line For Recording)---------------------------------------------

NOV  1 3 2003

## *LOAN MODIFICATION OF SECURITY DEED AGREEMENT*

This Loan Modification Agreement ("Agreement"), made this **17th** day of **June, 2003,** between, **Jo C. Barker and Robert W. Barker, Wife & Husband,** ("Borrower") and Credit Based Asset Servicing & Securitization, LLC ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust or Deed to Secure Debt ("the Security Instrument") dated, **February 23, 2001** and recorded in Book **2635** at page(s) **293** of the **Official Records of Columbia County, Georgia** (2) the Note bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property" located at

### 3997 DOWLING DRIVE
### MARTINEZ, GEORGIA 30907

### (Property Address)

The real property described being set forth as follows:

See Schedule "A" Attached Hereto and Made Part Hereof

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1.  As of **May 1, 2003,** the amount payable under the Note and the Security Instrument (the        "Unpaid Principal Balance") is U.S. **$175,461.38,** consisting of the amount(s) loaned to the Borrower by the Lender and any interest capitalized to date.
2.  The Borrower promises to pay the Unpaid Principal Balance, plus interest to the order of the Lender. Interest will be charged on the Unpaid Principal at the annual interest rate(which will change if applicable) and pay monthly payments of principal and interest in U.S. dollars("P&I") in accordance with the following schedule.

10/20/2003 at 11 51AM  Book 03996 Page 0076
Georgia Intangible Tax Paid   $31.50
+ 15.75 pen + .63 int = (47.88)
Cindy Mason  Columbia County Clerk of Court

| INTEREST CHANGE DATE | INTEREST RATE | PAYMENT DUE DATE | MONTHLY P&I PAYMENT |
|---|---|---|---|
| **05/01/2003** | **7.000**% | **06/01/2003** | **$1,167.30** |

MONTHLY PAYMENTS WILL REMAIN FIXED AT **7.000**% FROM **06/01/2003** FOR THE REMAINING TERM OF THE LOAN.

BK3896 PG077

If on **May 1, 2033** ("Maturity Date"), the Borrower still owes amounts under the Note and Security Instrument, as amended by this Agreement, the Borrower will pay these amounts in full on the Maturity Date

The Borrower will make such payments at:

4828 Loop Central Drive
Houston, Texas 77081

or at such other places as the Lender may require

3.   If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in the Borrower is sold or transferred and the Borrower is not a natural person) without the Lender's prior written consent, the Lender may, at its option, require payment in full of all sums secured by this Security Instrument.

If the Lender exercises this option, the Lender shall give the Borrower notice of acceleration. This notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by this Security Instrument. If the Borrower fails to pay these sums prior to the expiration of this period, the Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on the Borrower.

4.   The Borrower also will comply with all other covenants, agreements and requirements of the Security Instrument, including without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that the Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph no. 1 above:

(a)   all terms and provisions of the Note and Security Instrument (if any) providing for implementing or relating to, any change or adjustment in the rate of interest payable under the Note: and

(b)   all terms and provisions of any adjustable rate rider or other instrument or document that is affixed to, wholly or partially incorporated into or is part of, the Note or Security Instrument and that contains any such items and provisions as those referred to in (a) above.

5.   Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and the Borrower and Lender will be bound by and comply with all of the terms and provisions thereof as amended by this Agreement.

*Pat Bailey*

Witness #1
Print Name Also:

*Carol Etterlee*

Witness #2
Print Name Also:

*Jo C. Barker* _____ (Seal)

Jo C. Barker

*Robert W. Barker* _____ (Seal)

Robert W. Barker

STATE OF *Georgia*

COUNTY OF *Columbia*

On _*June 4, 2003*_ _____ before me *Deedee R. Hunter* _____

Date                                                Notary

personally appeared **Jo C. Barker and Robert W. Barker**

✓_____ Personally known to me

**-OR-**

_____ Proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or
the entity upon behalf of which the person(s) acted, executed the instrument.

*Deedee R. Hunter* _____

Signature of Notary Public

My Commission Expires:

**NOTARY PUBLIC COLUMBIA COUNTY
MY COMMISSION EXPIRES 5-28-07**

Document Preparation:
FNMA Multi-state Instrument
Standard Loan Modification Agreement
█████



BK 3996 PG 079

Credit Based Asset Servicing & Securitization, LLC

_Alfred Davis Jr._ _Stephen Stait_ (Seal)
Witness #1
Print Name Also: Alfred Davis Jr.
_Shanta Williams_
Witness #2
Print Names Also: Shanta Williams

STATE OF _Texas_

COUNTY OF _Harris_

On _7-1-03_ before me _STEVEN Richard Droddy_
   Date                                        Notary
personally appeared _STEPHEN STAIO_
                          Signer(s)

_✓_ Personally known to me

**-OR-**

_____ Proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or entity upon behalf of which the person(s) acted, executed the instrument.

| STEVEN RICHARD DRODDY |
| MY COMMISSION EXPIRES |
| April 20, 2006 |

_Signature of Notary Public_

My Commission Expires: 4/20/2006

---

**OPTIONAL INFORMATION**

**Capacity Claimed By Signer:**

Signer(s) Name: _____
Corporate Officer - Title: _____
Signer(s) is Representing: **Credit Based Asset Servicing & Securitization, LLC**

BK 3996 PG 080

## SCHEDULE "A" - LEGAL DESCRIPTION

All that lot or parcel of land, with improvements thereon, situate, lying and being in the State of Georgia, County of Columbia, being known and designated as Lot 3, Block "B", Heritage Hill Subdivision, Section II, as shown on a plat prepared by Robert L. Herrington, Jr. dated August 6, 1992, and recorded in the Office of the Clerk of Superior Court of Columbia County, Georgia in PC "B", Slide 172, #1; reference being made to said plat for a more complete and accurate description as to the metes, bounds and location of said property.

Said property is conveyed subject to Protective Covenants of record in said Clerk's Office in Deed Book 975, Page 80, et seq.

Search | Details | Map | More...

Zoom all | Mailing labels

CSV | Table view | Clear

**BARKER ROBERT W &**
**3997 DOWLING DR**

Zoom to

[Property Tax Bill](#) [Community Info](#)

[Sales History](#) [Map Links](#)

[redacted]

| | |
|---|---|
| Physical Address | 3997 DOWLING DR |
| Owner1 | BARKER ROBERT W & |
| Owner2 | BARKER JO C |
| Mailing Address1 | 3997 DOWLING DR |
| Mailing City | MARTINEZ |
| Mailing State | GA |
| Mailing Zip | 30907 |
| Legal Description 1 | BLK B LOT 3 |
| Legal Description 2 | HERITAGE HILL PHASE 2 |
| Legal Description 3 | |
| Land APV Value | $48,510 |
| Improvement APV Value | $293,633 |
| Total Value | $342,143 |
| Improvement Description | 1 STORY |

Columbia County Maps | Quick Search | Identify | Street View | Community Info | Map Themes | Print

[redacted]

